UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-82365-CIV-DIMITROULEAS

LAKENA PEETE,

    Plaintiff,

vs.

PALM BEACH COUNTY HOUSING AUTHORITY,
JOE ZALMAN, in his official capacity as Executive Director
of Palm Beach County Housing Authority, JEAN HALL, in her
official capacity as Section 8 Director of Palm Beach County
Housing Authority,

    Defendants.
_____/

**ORDER DENYING MOTION TO DISMISS;
DISMISSING DEFENDANT JEAN HALL**

THIS CAUSE is before the Court upon Defendants Palm Beach County Housing Authority, Joe Zalman, and Jean Hall's Motion to Dismiss Amended Complaint and Memorandum of Law in Support [DE-16], filed herein on March 15, 2010. The Court has carefully considered the Motion, Plaintiff's Response [DE-17], Defendants' Reply [DE-18], and is otherwise fully advised in the premises.

**I. BACKGROUND**

On December 2, 2009, Plaintiff Lakena Peete filed the instant action alleging that Defendants Palm Beach County Housing Authority ("PBCHA"), Joe Zalman ("Zalman"), in his official capacity as Executive Director of the PBCHA, and Jean Hall ("Hall"),[1] in her official

---

[1] Plaintiff subsequently requested that the Court dismiss Defendant Hall from this action since she did not have final decision-making power on behalf of Defendant PBCHA. [DE-17, at pg. 10]. As such, Defendant Hall is entitled to dismissal from this action on this ground and Defendants' arguments related to Hall will not be specifically addressed.

capacity as Section 8 Director of the PBCHA violated the federal requirements of 24 C.F.R. § 982.552 (2008) and the due process requirements of both 24 C.F.R. § 982.555 (2009) and the Fourteenth Amendment of the United States Constitution.  Plaintiff alleges she was a Section 8 Housing Choice Voucher ("Section 8") recipient through PBCHA until her voucher was terminated on or about November 2, 2009.

On February 8, 2010, this Court granted Defendants' Motion to Dismiss [DE-14]. Thereafter, Plaintiff filed her Amended Complaint on February 25, 2010.  Plaintiff asserts three counts in the Amended Complaint against Defendants: Count I is a claim for violation of Plaintiff's constitutional due process rights by improper informal hearing procedures; Count II is a claim for violation of Plaintiff's constitutional due process rights by failing to prove valid termination grounds; and Count III is a claim for violation of Plaintiff's constitutional due process rights by failing to provide proper termination notices and an opportunity to challenge the termination grounds.  Defendants filed the instant motion to dismiss on March 15, 2010.

## II.  DISCUSSION

### A.   Legal Standard

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)).  "A claim has facial plausibility when

2

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F.2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).

However, this is inapplicable if the allegations are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements . . .". *Iqbal*, 129 S. Ct. at 1949. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint, and "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

**B.     Defendants' Motion to Dismiss**

Defendants argue that Plaintiff's Amended Complaint does not cure the defects of the original complaint and should be dismissed with prejudice as Plaintiff cannot prove any set of facts in support of her claims. Defendants argue that (1) Plaintiff cannot allege a 42 U.S.C. § 1983 claim as a matter of law because Defendants did not act under color of State law, and (2) Plaintiff fails to state a cause of action under 42 U.S.C. § 1983 as Plaintiff fails to allege facts sufficient to establish that Defendants were policymakers.

   **1.     Defendants Did Not Act Under Color of State Law**

Much like their previous motion to dismiss, Defendants contend that in order to prevail under § 1983 a plaintiff must show that he or she was deprived of a "federal right by a person

acting under color of state law." *Griffin v. City of Opa-Locka,* 261 F. 3d 1295, 1303 (11th Cir. 2001). Defendants point to the Eleventh Circuit's opinion in *Shell v. Dep't of Housing and Urban Dev.,* Case No. 09-12811, 2009 WL 4298757, at *6 (11th Cir. Dec. 2, 2009), where the Eleventh Circuit upheld dismissal of a Section 8 plaintiff's case, finding that the plaintiff "could not prove any set of facts in support of his Fourteenth Amendment and 42 U.S.C. § 1983 claims that would entitle him to relief . . . because neither of the defendants were acting under color of state law, since their actions were performed on behalf of a federal agency distributing federal benefits." Defendants argue that like the defendants in *Shell,* although the PBCHA was alleged to be created by Florida statutes, the Section 8 program operates in accordance with federal law, distributing federal funds, on behalf of a federal agency, the Department of Housing and Urban Development ("HUD"). As such, Defendants argue that at all times while they were operating the Section 8 program, Defendants were operating on behalf of a federal agency, under color of federal law. Thus, Defendants argue that Plaintiff's claims fail because Defendants were not operating under color of state law in their issuance and administration of the Section 8 program.

Defendants distinguish the two cases relied upon by Plaintiff in her Amended Complaint – *Billington v. Underwood,* 613 F. 2d 91 (5th Cir. 1980) and *Staten v. Housing Authority of Pittsburgh,* 638 F. 2d 599 (3d Cir. 1980) – on the ground that there is a distinction between a §1983 lawsuit against a housing authority operating as a public housing landlord versus where the housing authority, as here, is operating as a distributor of federal funds as a Section 8 administrator. Defendants also reject Plaintiff's reliance upon excerpts from the PBCHA documents which contain general statements regarding the overview of the program and its creation as being a red herring, as these excerpts also state that the PBCHA receives its funding

4

from HUD and has a contract with HUD to administer the program requirements on behalf of HUD. Defendants argue that these excerpts further serve to support the analogy to the facts under *Shell,* wherein the housing authority was similarly charged with administering HUD's Section 8 program. Therefore, consistent with the Eleventh Circuit's holding in *Shell* and the Court's prior Order [DE-14] which held that "Plaintiff fails to state a claim under 42 U.S.C. § 1983, because the Defendants were not acting under color of state law 'since their actions were performed on behalf of a federal agency distributing federal benefits,'" [DE-14, at pg. 7-8], Defendants argue Plaintiff's claims should be dismissed with prejudice.

In opposition, Plaintiff points to *Goldberg v. Kelly,* 397 U.S. 254, 262 (1970), where the Supreme Court indicated that the termination at issued involved "state action" and to *Billington,* 613 F. 2d at 92 n. 1, for the proposition that the actions of the housing authority were taken under color of state law. Plaintiff also relies upon *Basco v. Machin,* 514 F. 3d 1177 (11th Cir. 2008), which involved a § 1983 claim against a housing authority for termination of Section 8 benefits, arguing that *Basco* did not hold that the housing authority was acting under color of federal law because it received federal funds. Based upon these cases, Plaintiff contends that Defendants are liable for violating Plaintiff's due process rights under § 1983 and the Fourteenth Amendment since they acted under color of state law. Plaintiff also attempts to distinguish the *Shell* decision from the present facts on several grounds. First, Plaintiff argues that *Shell* involved a *pro se* plaintiff on a conspiracy claim rather than a due process claim. Second, Plaintiff argues that *Shell* is devoid of any information regarding whether the housing authority in *Shell* had an administrative plan like the PBCHA's which indicated that the PBCHA was not a federal department or agency, but rather was created pursuant to state law. Third, Plaintiff contends that

5

the *Shell* opinion provides no rationale for deeming the housing authority at issue a federal agency or classifying its employees as federal employees and there is no indication how the Court reached its decision.  Finally, Plaintiff points out that *Shell* involved a *pro se* litigant who filed numerous complaints and motions and as such the facts of the instant action are clearly distinguishable.  Plaintiff argues that the mere fact of receiving federal funds does not make a state agency act under color of federal law.

In reply, Defendants dispute Plaintiff's reliance on *Goldberg,* arguing that the propriety of raising a § 1983 claim against an agency such as a housing authority was never argued and, thus, Plaintiff is attempting to rely on mere dicta.  Further, Defendants reiterate that the *Billington* decision involved a housing authority acting in its role as a landlord under state law and the issue of § 1983's applicability to cases beyond the scope of the issue in *Billington* was not addressed.  Similarly Defendants dispute Plaintiff's reliance on *Basco* and argue that the issue of the applicability of § 1983 to the claim was never apparently raised or discussed by the Eleventh Circuit.  On the contrary, Defendants point to *Shell* and argue that the Eleventh Circuit specifically raised the issue of the applicability of § 1983 and concluded that the plaintiff could not prove any set of facts in support of his Fourteenth Amendment and § 1983 claim because "neither of the defendants were acting under color of state law, since their actions were performed on behalf of a federal agency distributing federal benefits."  *Shell,* 2009 WL 4298757 at *6.

Defendants also argue that none of Plaintiff's attempts to distinguish *Shell* are applicable or enable Plaintiff to state a cause of action.  Defendants argue that if a § 1983 action against a housing authority distributing federal funds on behalf of a federal agency is procedurally

incorrect, then the underlying basis for the claim has no bearing.  Further, whether the housing authority in *Shell* and the PBCHA here have different origins, Defendants argue this does not bear on the fact that both housing authorities operate as agents for the Section 8 program under the same federal guidelines performing the same administrative functions: distributing federal money on behalf of a federal agency.  Finally, Defendants argue that while a § 1983 claim may be applicable against a housing authority in other capacities such as a landlord, property owner, or employer, the *Shell* court made clear that in its capacity as a distributor of federal funds on behalf of a federal agency, the housing authority acts purely as a federal agent.

As previously indicated by the Court in its Order Granting Motion to Dismiss [DE-14], each of Plaintiff's claims are premised upon § 1983.  42 U.S.C. § 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights.*"  Almand v. Dekalb County*, 103 F. 3d 1510, 1512 (11th Cir. 1997).  In order to state a § 1983 claim, a plaintiff must point to a violation of a specific federal right.  *Whiting v. Traylor*, 85 F. 3d 581, 583 (11th Cir. 1996).  Further, in "order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin,* 261 F. 3d at 1303.  Thus, the present action turns on whether the PBCHA and its employees in terminating Plaintiff's Section 8 benefits were "acting under color of state law." *Id.*

Unlike the original complaint, in support of the Amended Complaint, Plaintiff has now offered a line of cases leading up to the *Shell* opinion where courts seem to indicate that local housing authorities are state actors acting under color of state law. While these cases are in some instances factually distinguishable, these decisions were largely reached without any question as to whether the housing authorities were state actors versus federal actors as this issue seems to have been assumed or conceded by the parties and the courts. In fact, in *Billington,* the Fifth Circuit[2] expressly concluded that the housing authority's actions, as a "federally subsidized, state chartered, locally administered corporate body" established pursuant to state law, were taken under color of state law. 613 F. 2d at 92 n. 1.

On the other hand, in the unpublished *Shell* decision, the Eleventh Circuit broadly concluded that the plaintiff "failed to state a claim under 42 U.S.C. § 1983, because neither of the defendants were acting under color of state law, since their actions were performed on behalf of a federal agency distributing federal benefits," thus appearing to draw a distinction in those instances where the housing authority acts in its capacity as a distributor of federal funds on behalf of a federal agency. *Id.* Yet, in light of the caselaw preceding the *Shell* decision that was cited by Plaintiff and due to the lack of analysis or explanation by the *Shell* court and the decision's reference to the defendants in general, the Court finds the Eleventh Circuit's decision in *Shell* to be ambiguous as to whether this holding was intended to apply to all the defendants or merely to those defendants that were federal agencies and federal employees. The plaintiff had brought suit against HUD, clearly a federal agency, as well as against the Hollywood, Florida

---

[2] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Housing Authority ("HHA") and its employees. The Eleventh Circuit affirmed this Court's decision which had found that the federal agencies and its officials acted under color of federal law, not state law. [Case No. 08-60589, DE-114, at pg. 5-6]. However, this Court made no finding in its opinion as to whether the HHA and its employees likewise acted under color of federal law rather than color of state and, as such, the Court does not believe that this issue was necessarily before the Eleventh Circuit. *Id.* Indeed, in finding that neither of the defendants were acting under color of state law, the Eleventh Circuit first concluded that the "defendants [were] a federal agency and a federal employee." 2009 WL 4298757 at *6.

Thus, based upon a review of cases cited by Plaintiff and the district court's opinion that was affirmed in *Shell,* the Court is concerned that the language relied upon by Defendants from the *Shell* decision may be dicta as it applies to the PBCHA and its employees. Instead, it appears that this cited language referred to those defendants that were clearly federal agencies and federal employees and was not intended by the Eleventh Circuit in one broad sweep to alter the existing state of the law that deemed local housing authorities to be state actors without any explanation or analysis. Further, the Court is not persuaded that the facts are sufficiently developed at this time to even determine whether PBCHA and its employees were state actors and if so, whether they distributed federal funds on behalf of a federal agency since the parties have pointed to competing excerpts from the PBCHA's documents in this regard. Therefore, the Court finds that Plaintiff has adequately alleged that Defendants were acting as state actors in order to survive a motion to dismiss and, as such, Defendants are not entitled to dismissal on this ground at this stage in the litigation.

## 2. Failure to Allege Facts Sufficient to Establish Defendants were Policymakers

Also like their previous motion to dismiss, Defendants argue that Plaintiff's Amended Complaint should be dismissed because Plaintiff fails to allege facts sufficient to establish that Defendants were policymakers as required by § 1983. Defendants argue that in order to bring an action under § 1983 against a municipality, a plaintiff must plead "(1) an official policy or custom that (2) causes the plaintiff to be subject to (3) a denial of a constitutional right." *Batista v. Rodriguez,* 702 F. 2d 393, 397 (2d Cir. 1983). Further, in order to hold a municipality liable, Defendants argue a plaintiff must show that the individually-named defendants had final policymaking power. *Falkowski v. North Fork Housing Alliance,* Case No. 08-CV-2550(JS)(AKT), 2009 WL 3174029, at *3 (E.D.N.Y. Sep. 30, 2009).

Defendants point out that Plaintiff repeatedly references Zalman's decision to deny Plaintiff a rehearing following the hearing officer's decision as evidence of Zalman's policymaking power and that Plaintiff also argues Zalman has the final policymaking power according to PBCHA's own policy. Yet Defendants argue that Plaintiff fails to cite to any rule or regulation or other printed form of media that states such a delegation of final policymaking power. Instead, Defendants argue that Zalman's authority to deny a rehearing is a power delegated to him through the PBCHA's administrative plan and that it is the same power he possesses to manage every other aspect of the day-to-day administration of the program. Thus, Defendants contend that Plaintiff has not alleged a power of final policymaking.

In response, Plaintiff argues that pursuant to the hearing decision, it was within the sole discretion of the PBCHA to grant or deny the request for further hearing or rehearing and that Defendant Zalman denied Plaintiff's request and upheld the Hearing Officer's decision.

Plaintiff argues that since there was no further level of review within PBCHA after the hearing other than through court, Zalman's actions should be deemed final agency action or policy which deprived Plaintiff of her procedural due process rights, thereby meeting the requirements of Defendants' cited cases. Defendants reply by reiterating that Zalman's decision to deny Plaintiff a rehearing is a decision within the authority of any administrator in day-to-day management of a housing authority. Defendant argues that a single instance of a denial of a hearing – a power exercised on a case-by-case basis – is hardly evidence of policymaking in order to hold Zalman liable under § 1983.

The Court concludes that at this stage in the litigation and based upon the allegations of the Amended Complaint, Plaintiff has adequately alleged that Zalman had final policymaking power in order to survive a motion to dismiss. Unlike the original complaint, Plaintiff has alleged facts beyond simply alleging Zalman's position and that he controlled the day-to-day administration of the Section 8 program in order to state a plausible claim under § 1983. The Court finds that the issue of whether Zalman in fact had final policymaking power involves questions of fact that cannot be resolved at this time and, as such, the Court finds that Defendant Zalman is not entitled to dismissal from this action on this ground.

### III. CONCLUSION

Accordingly, for the aforementioned reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Jean Hall is hereby **DISMISSED without prejudice** from this action;

    2.       Defendants Palm Beach County Housing Authority, Joe Zalman, and Jean Hall's Motion to Dismiss Amended Complaint and Memorandum of Law in Support [DE-16] is hereby **DENIED**;

    3.       Defendants shall file their Answer to the Amended Complaint within fourteen (14) days from the date of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 26th day of April, 2010.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of record